Filed 4/11/13  P. v. Morales CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054587 |
| v. | (Super.Ct.No. RIF150397) |
| JAIME SAUL MORALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Christian F. Thierbach, Judge.  Affirmed.

Victoria Barana and Anita P. Jog, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jaime Saul Morales appeals after a jury convicted him of several sex offenses committed against a minor. He raises the single contention that the trial court erred in imposing consecutive sentences on two of the counts, because there is no way to determine whether the offenses occurred on "separate occasions," within the meaning of former Penal Code section 667.6, subdivision (d). We affirm.

<u>FACTS AND PROCEDURAL HISTORY</u>

Defendant was employed at a construction company yard between approximately 2002 and 2008. The company's owner had office and storage facilities at the construction yard. There was also a mobilehome on the property, where defendant lived with his wife during most of the time he was employed at the yard. Otherwise, defendant's duties included keeping a security watch on the yard, keeping it clean, and helping to load and unload trucks.

The victim was the son of the owner of the construction yard. When he was 12 years old, in about 2002 or 2003,[1] the victim began working for his father's company during his summer vacation. The victim was assigned to pick up lumber and to remove nails from good pieces of wood so they could be reused. The victim spent about 12 hours a day at the construction yard that summer. He and defendant often interacted at the yard. One day, defendant and the victim had been cleaning some lumber when they engaged in some horseplay. As they were playfully wrestling, defendant touched the

---

[1] The victim stated in some of his trial testimony that the molestations began in 2002. He was unsure, however, whether they actually took place initially in 2002 or 2003. The victim's father testified that the victim began working at the construction yard in 2003.

2

boy's penis. Defendant took the victim into a shed where tools were stored, and started rubbing the victim's genital area over his clothes. Defendant threatened to "fucking kill" the victim if he told anyone. Defendant pulled down the victim's pants and masturbated him. The victim was shocked, but he did not cry. Defendant then wanted the victim to masturbate defendant's penis; the victim reluctantly complied because he was scared. Defendant ejaculated on the ground.

Throughout the rest of the summer, the victim testified, he and defendant engaged in acts of oral sex two or three times a week at various locations in the construction yard. Sometimes the acts took place in the mobilehome that defendant lived in at the yard. The victim testified that defendant would perform oral sex on him, and the victim would then perform oral sex on defendant. Defendant always ejaculated on the ground.

Defendant never repeated the threat he made during the first encounter. Defendant also did not use physical force during any of the acts of oral copulation. However, the victim participated only because he was "very much scared" of defendant after the original threat. Each act was against the victim's will. On one occasion, defendant put on a condom and attempted to penetrate the victim; the victim pushed defendant away because "[i]t hurt too bad." Thereafter, the victim did not let defendant have anal sex because the physical pain was too great. The victim did not tell anyone what was happening because he felt ashamed for himself and for his family. From time to time, the victim asked not to work at the construction yard, but he was too ashamed to tell the truth. The victim otherwise could not come up with a valid reason to stop working at the yard, so his father had him continue working there.

3

The next year, in 2003, the victim again worked at his father's construction yard during the summer months. He was assigned the same kinds of duties as the previous year. The victim's father spent most of his time in the office. The victim, as well as defendant, spent most of the day at the yard. The yard superintendent supervised both defendant and the victim. That summer, defendant had oral sex with the victim two or three times a week. Defendant did not threaten the victim again, but he would give him a certain "look" to let the victim know when he wanted to have oral sex with the victim.

One day, defendant and the victim were engaged in an act of oral sex when they heard the victim's father coming their way. Defendant got up and walked away; the victim pulled up his pants and walked quickly in a different direction. The victim's father was upset because the victim appeared to be "goofing off" and not working; the victim gave the excuse that he had been chasing a lizard. The victim's father told him he was fired, and sent him home. The victim returned to the construction yard a few days later, however, and resumed his work at the yard.

The next year, in 2004, the victim again spent the summer working at his father's construction yard. By now, the victim was about 14 years old, and had grown taller. The victim was about the same height as defendant that year. Again, defendant would give the victim a "look" to signal when he wanted to have sex with the youngster, which they did about twice a week that summer. The victim again asked his father if he could stop coming to the yard, but he still was unable to tell him the real reason, or to give a satisfactory excuse for quitting.

4

The next summer, in 2005, the victim spent less time working at the construction yard. The sexual contacts with defendant became less frequent. The victim also started to say "no" to defendant, when defendant asked him for sex.

In 2006, the victim's father became aware of other accusations against defendant. That is, the young son of the yard supervisor reported that defendant had molested him. In following up these allegations, the victim's father asked the victim whether defendant had ever molested the victim. The victim denied that anything had happened, because he felt ashamed. He was about 16 years old at that time; the supervisor's son was about five or six years younger than the victim.

Defendant stopped working at the construction yard in approximately June of 2008.

In 2009, the victim, then 19 years old, was driving home with a friend when he happened to see defendant working in someone's front yard. The victim remembered the molestations and told his friend. The victim's friend encouraged him to tell his parents, which the victim did in a letter. The victim's father, upon reading the letter and talking to the victim, called his lawyer, who advised them to go to the police.

By the time of trial, the victim was 21 years old, and working full-time for his father's construction company.

As a result of bringing the molestations to light, defendant was ultimately charged in a second amended information with five offenses: Count 1 alleged a violation of Penal Code section 269, subdivision (a)(4) (aggravated assault on a child under age 14), "in that on or about June 2003, through and including September 2003 . . . he did willfully,

5

unlawfully, and lewdly commit oral copulation on [the victim], a child under 14 years of age, by force, violence, duress, menace and fear of immediate and unlawful bodily injury . . . where the said child is 10 or more years younger than the defendant . . . ."

Count 2 contained an identical allegation of a second offense, again in violation of Penal Code section 269, subdivision (a)(4), "in that on or about June 2003, through and including September 2003 . . . he did willfully, unlawfully, and lewdly commit oral copulation on [the victim], a child under 14 years of age, by force, violence, duress, menace and fear of immediate and unlawful bodily injury . . . where the said child is 10 or more years younger than the defendant . . . ."

Count 3 charged a violation of Penal Code section 288, subdivision (c)(1) (lewd act upon a child of 14 or 15), "in that on or about June 2004 through and including September 2004 . . . he did willfully, unlawfully, and lewdly commit a lewd and lascivious act upon [the victim], a child under the age of sixteen years and more than ten years younger than said defendant with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the said defendant and the said child."

Count 4 of the second amended information originally charged a violation of Penal Code section 288a, subdivision (b)(2), but was amended by interlineation just before trial to charge a violation of Penal Code section 288, subdivision (c)(1), the same offense (and presumably the same dates) as in count 3.[2]

_____

[2] The court apparently failed to interlineate the remainder of the allegation in count 4, leaving it to read that defendant had, "on or about June 2004 through and including September 2004 . . . willfully and unlawfully, being over the age of 21 years,

6

Count 5 alleged a violation of Penal Code section 288a, subdivision (b)(2) (felony oral copulation), "in that on or about June 2005 through and including September 2005 . . . he did willfully and unlawfully, being over the age of 21 years, participate in an act of oral copulation with [the victim], a person under the age of 16 years."

Thus, the second amended information charged two identical counts of aggravated sexual assault on a child under age 14 in 2003, two identical counts of lewd and lascivious acts on a child under age 16 in 2004, and one count of felony oral copulation in 2005. At the preliminary hearing, the trial court had inquired as to the basis for two identical counts of aggravated sexual assault, between June 2003 and September 2003. The court asked, "what's the difference between 1 and 2? It's the same victim, the same time period." The prosecutor replied, "Right. Just that it happened multiple times. It happened more than once. We didn't charge every time, but it was enough to charge twice." The court held defendant to answer on both count 1 and count 2, on the basis that the victim told police about multiple incidents of oral copulation in 2003, and specifically referenced a different location—i.e., the mobilehome defendant occupied on the premises—for at least one of the acts.

The case was tried to the jury, with the evidence as described *ante*. At the close of the prosecution's case, the trial court entered a judgment of acquittal on count 5, the oral copulation alleged to have taken place in 2005, on the basis that the victim could not clearly remember any particular incidents that had taken place with defendant. The court

participate[d] in an act of oral copulation with [the victim], a person under the age of 16 years."

7

found the state of the evidence too speculative, and removed count 5 from the jury's consideration.

In his defense, defendant presented only the testimony of his wife, to the effect that defendant did not speak English, and the victim did not speak Spanish. The defense closing argument relied on inconsistencies in the evidence, including the victim's confusion about which year the molestations actually began or when certain incidents took place, and the supposed "language barrier," which caused counsel to question, "How are they communicating?"

The jury returned guilty verdicts as to all four remaining counts. The court sentenced defendant to a term of 30 years to life in prison: the court selected count 1 as the principal count and imposed a term of 15 years to life for that offense. The court imposed a consecutive term of 15 years to life on count 2 noting that, "A consecutive term is mandated by Penal Code section 667.6 subdivision (d) . . . ." The court imposed a concurrent term of two years on count 3, and another term of two years on count 4, to run concurrently to both the sentence in count 3 and the sentences on counts 1 and 2. The court also entered orders as to certain fines and fees, and other details of the sentence.

Defendant filed a timely notice of appeal.

### ANALYSIS

### I. Contention and Standard of Review

Defendant raises the sole contention that the trial court erred in imposing consecutive sentences on counts 1 and 2, on the theory that the evidence failed to show that the offenses took place or occurred on "separate occasions." Former Penal Code

8

section 667.6, as in effect in 2003 (the date of the offenses in counts 1 and 2), provided in subdivision (d), that, "A full, separate, and consecutive term shall be served for each violation of . . . committing . . . oral copulation in violation of Section . . . 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . if the crimes involve separate victims or involve the same victim *on separate occasions.*"[3]

Defendant contends that, in order to impose full consecutive sentences on counts 1 and 2, the court was required to find that each count was based upon acts that occurred on a separate occasion from the other count.

---

[3] Former Penal Code section 269, as in effect in 2003, provided in subdivision (a)(4), that, "(a) Any person who commits any of the following acts upon a child who is under 14 years of age and 10 or more years younger than the person is guilty of aggravated sexual assault of a child: [¶] . . . [¶] (4) Oral copulation, in violation of section 288a, when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ."

In *People v. Figueroa* (2008) 162 Cal.App.4th 95 [Fourth Dist., Div. Two], this court considered a case in which the defendant had been convicted of violations of Penal Code section 269 (aggravated sexual assault), for raping a minor under age 14, and more than 10 years younger than the perpetrator. That case, like this, involved crimes that occurred before 2006, when amendments had been made to both Penal Code section 269, and Penal Code section 667.6. Before 2006, former Penal Code section 667.6 did not specifically name a violation of Penal Code section 269 as an offense requiring full consecutive sentencing; however, full consecutive sentencing was required for certain enumerated crimes, including rape of a minor victim under Penal Code section 261, accomplished by force, violence, duress, menace, or fear of immediate and unlawful bodily injury, provided that the crimes involved either separate victims, or the same victim on separate occasions.

In upholding full consecutive sentences in that case, this court determined that the defendant could take no comfort from the omission of Penal Code section 269 as an offense qualifying for full consecutive sentencing; in order to have convicted the defendant of the offenses under Penal Code section 269, the jury necessarily had to have decided that the defendant had committed a rape under Penal Code section 261, which was listed as an offense qualifying for full consecutive sentencing. (*People v. Figueroa*, *supra*, 162 Cal.App.4th at pp. 98-99.)

9

Defendant urges that sentencing errors are generally reviewed under an abuse of discretion standard. (See *People v. Welch* (1993) 5 Cal.4th 228, 234.) The court is required to exercise "informed discretion" when implementing a sentence. If the trial court erroneously misunderstood its discretion—here, defendant contends the trial court was mistaken in thinking that consecutive sentencing was mandatory—then the matter should be remanded for resentencing, under a proper understanding of the court's discretion. (See *People v. Fuhrman* (1997) 16 Cal.4th 930, 944.)

## II. The Trial Court Properly Imposed Consecutive Sentences

Both offenses charged in count 1 and count 2 of the second amended information alleged that the offenses occurred within the same time frame, from June 2003 through September 2003. The victim described numerous molestations that took place during that time frame. As noted, the victim was unsure at some times whether some of the events had taken place in 2002 rather than 2003, but he acknowledged that he might have been mistaken as to which year the molestations began. The victim's testimony about the second year of molestations largely mirrored his testimony about the first year. The victim's father believed that the victim first worked at the construction yard in 2003. It was within the exclusive province of the jury to resolve the issue as to when the molestations occurred. (See Evid. Code, § 312, subd. (b) ["Subject to the control of the court, the jury is to determine the effect and value of the evidence addressed to it, including the credibility of witnesses"]; *People v. Sanders* (1995) 11 Cal.4th 475, 531 [the jury is assigned the exclusive function of resolving questions of fact, credibility of witnesses, and the weight to be accorded evidence].)

10

The precipitating event, when defendant first touched the victim in the genital area, and then engaged in mutual masturbations in the shed, did not involve any oral copulation. That was the incident, however, when defendant threatened the victim. The victim thereafter complied with defendant's initiation of other molestations, including numerous acts of oral copulation, because he was afraid of defendant. The initial sexual molestation therefore did not qualify as an act of aggravated oral copulation, even though evidence of that event was necessary to establish the element of force or fear.

Aside from the initial masturbatory contact, however, the victim described numerous acts of oral copulation, both defendant's oral copulation of the victim, and the victim's oral copulation of defendant. The victim testified that, the first summer, some of the events took place in the mobilehome that defendant occupied on the premises. Others took place behind a garage building on the property. Still others took place inside the shed where the initial encounter had happened. Defendant would have oral sex with the victim two to three times a week that first summer.

The second summer, which the victim identified as 2003, also involved numerous acts of oral copulation, in the same locations as before (i.e., the shed, behind the garages, and in the defendant's mobilehome), and at about the same frequency (two to three times a week). The victim described in detail the one incident when his father nearly discovered defendant orally copulating the victim, behind the garage building. When they heard the victim's father approaching, defendant got up and hurried away, while the victim quickly pulled up his pants and walked in a different direction. The victim's

father asked the victim why he was not working, and the victim gave the excuse that he had been chasing a lizard.

Before submitting the case to the jury, the court and counsel conferred about the instructions. The court stated its view that counts 1 and 2 were each based on a "course of conduct," occurring within the period of time stated in the charges. The jury would not, then, need to agree on precisely the same acts as the basis for each conviction. The court proposed to give a "non-unanimity" instruction pursuant to *People v. Napoles* (2002) 104 Cal.App.4th 108. The special instruction directed the jurors to determine, as to each count, whether defendant had engaged in some acts to prove the course of conduct alleged as to that offense, but the jurors need not rely on the identical acts in reaching this conclusion. Counts 1 and 2, under the *Napoles* "non-unanimity" instruction, were each based on a jury finding of a "course of conduct" occurring within the same time frame.

Defendant maintains that, although he disagrees with the trial court's treatment of counts 1 and 2 as "continuous course of conduct" offenses, he does not challenge the non-unanimity instruction. He also asserts that he is not challenging the validity of the convictions. Rather, defendant narrows the focus of his claim as purely a sentencing error: because of the "non-unanimity" instruction, "it is simply not possible to ascertain that the two convictions were based upon offenses that occurred on separate occasions. In other words, it is possible that different members of the jury relied upon the same act or acts to support the conviction on different counts. In such case, the convictions would

12

not be based upon acts that occurred on separate occasions as required by subdivision (d) of section 667.6.”

We reject this claim. Defendant does not challenge the validity of his convictions of counts 1 and 2. He also states that he is not challenging the appropriateness of the “non-unanimity” instruction. Given those concessions, we are left with two guilty verdicts, each based upon a finding that defendant engaged in acts amounting to a course of conduct occurring between the dates of June 2003 and September 2003. In order to find defendant guilty of two separate counts, the jurors were required to find sufficient acts to constitute a course of conduct as to each charged offense. The evidence indicated that defendant forced the victim to engage in multiple acts of oral copulation in the summer of 2003. There are many possible ways in which the jurors could have concluded that defendant was guilty of two separate counts: (1) Time: the incidents took place two or three times a week throughout the summer. (2) Place: the incidents took place multiple times in at least three distinct locations. (3) Type of conduct: the incidents consisted of different types of acts, e.g., defendant orally copulating the victim, and the victim orally copulating defendant. Regardless of which basis any individual juror used to make a “course of conduct” finding as to each count, every single juror must necessarily have concluded there were two distinct courses of conduct occurring within the same time frame. Any rational basis for distinction between the courses of conduct as to each count necessarily includes a finding that each of the offenses constituted a “separate occasion” from the other. Any of the bases for determining a “course of

13

conduct," also contemplated "separate occasions," even for the events within or constituting the course of conduct.

On these facts, it defies reason to claim that the two convictions (the validity of which defendant pointedly does not contest) were not based on conduct occurring on "separate occasions." Because both convictions necessarily involved the same victim on separate occasions, full consecutive sentencing was proper. (Cf. also, *People v. Figueroa*, *supra*, 162 Cal.App.4th at pp. 98-99.)

The trial court did not misunderstand or abuse its discretion in imposing mandatory full consecutive sentences for counts 1 and 2.

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER</u>
                                                                    J.

We concur:

<u>RAMIREZ</u>
                    P. J.

<u>KING</u>
                    J.

14